Curia, per
Evans, J.
By the common law, plaintiff in ejectment might bring as many actions as he pleased. This was restricted by the fourth section of the limitation Act of 1712, (2 Stat. 584,) to a single action; and, in case the verdict and judgment were against the plaintiff, or he discontinued his action, or suffered a nonsuit, or any other way let fall his action, then *55 such trial and judgment thereupon, or discontinuance, or non-suit, or other letting fall the action or suit, shall be conclusive and definitive, on the plaintiff’s part, forever. This was altered by the Act of 1744, (3 Stat. 612,) whereby it was provided that such “verdict and judgment, discontinuance, nonsuit, or other letting fall the action or suit,” shall not be conclusive and definitive on such plaintiff, but, at any time within two years, the said plaintiff, or those claiming under him, shall have a right to commence an action de novo. From this Act it would seem that the plaintiff, whose second action is to be barred, must be the same plaintiff against whom verdict had passed on the former trial, or who had discontinued his suit, been nonsuited, or let fall his action. Now, in law, there is no identity between a corporation and the persons who compose it. A conveyance to a corporation vests the estate in the corporation, and not in the persons who compose it; and actions for wrongs to the estate of the corporation cannot be redressed by an action in the name of the individuals of whom it is composed. It follows from this, that, of necessity, Godfrey and the other plaintiffs in the first action would have been nonsuited, if the case had ever come to trial, because they had no estate in the premises, and could maintain no action to recover the land or damages. There cannot be said to be any identity in the actions. They were both for the same land, but they were not by the same plaintiffs or those claiming under them. There is nothing in the case of Lynch v. Withers, (2 Bay, 115,) which maintains the contrary. In that case, there,had been three actions. The first was in the name of Thomas Smith, the testator, who was dead when the action was brought. This, the Court said, was a nullity, although it had been tried, and, I believe, a verdict found for the defendant. The second was in the name of Robert Smith, the heir at law, in whom the fee vested until the sale by the executors ; and the third in the name of the purchaser from the executors. It was properly held, that the second was a bar to the third, because the plaintiff, in the third action, derived his title through Robert Smith, the plaintiff in the second action, who was, at *56 the time the action was brought, the person seized of the land and entitled to the possession.
But we have not the pleadings before us, and, as it may be possible, by proper statements and averments, to identify the plaintiffs in the first with the plaintiffs in the second action, it is not intended to put the decision of the case on that ground alone.
I suppose that, to make the first action a bar to the second, there must be some legal evidence of the termination of the first suit. No action has any legal end, until there is some judgment of the Court upon it. When a defendant is brought into Court by a writ ad respondendum, he is to remain until discharged from the action by some judicial determination of it. The rules of practice require the plaintiff to file his declaration within a given time; but, if he does not do so, further time may be granted from term to term, and I have known this leave renewed for two or three }rears in succession, and I have no doubt it may be prolonged to a still greater period. The only legal evidence of the termination of an action is a judgment, either that the plaintiff recover, or that the defendant go without day. We think, therefore, the evidence offered at the Circuit Court was no evidence that the plaintiffs had discontinued or let fall their action, or of verdict or nonsuit. This has, I know, been understood to be the law generally by the profession, and I have known more than one case where leave had been applied for to enter up a judgment nunc pro tunc where the plaintiff had failed to prosecute his first action, for the express purpose of pleading it in bar of the second action. The first case of which we have any record is that of Sims vs. De Graffenreid, decided in the Court of Appeals in 1829. The case is not reported, but will be found among the manuscript decisions. In that case, there had been three actions, all of which had been disposed of by nonsuit or discontinuance, or in some other way had been let fall. These were pleaded in bar, and, in a brief of the case, made by the defendant’s counsel, it is said, there was a formal judgment of nonsuit entered up in one of the cases; but, in the *57 report of the case by Judge Nott, who tried it on the circuit, it is said there was no evidence that any nonsuit had been granted. It appeared that an action had been commenced, but how it was disposed of did not appear; and, in the opinion afterwards delivered by him in the Appeal Court,'he says — “ When the plea of former recovery is pleaded in bar, the plea should conclude prout patet per recordum, and the plea must be verified by the production of the record itself. No such record was produced in this case, and therefore the plea was not supported. It is true that a discontinuance, or letting fall the action, is, in the language of the Act, as good a bar as a nonsuit, but then the plea must correspond with the fact” In that case, as in this, it appeared that an action had been commenced, but it did not appear in what way it was ended; and it is clear, from the remarks of the judge, that the opinion of the Court was, that the evidence of the termination of the first suit, two years before the bringing of the second action, should be proved by the production of the record, and that the plea should conclude, as is said, prout patet per recordum. There can be no end of a suit for which the law does not provide an appropriate judgment, whether there be a verdict, a nonsuit, a discontinuance, or a failure to proceed according to the rules of the Court, which, I suppose, is what is meant by “ letting fall the action.” I remember a case, in the Appeal Court in Charleston, some years ago, brought by Benjamin Allston vs. Sing, (Riley’s Cases, 199,) which was abandoned, or struck from the docket for failure to prosecute it: the defendant having promised to give up the land, as was said. On his refusal to do so, a second action was brought, but not until after the expiration of two years. The defendant moved for leave to enter up judgment of non pros., nunc pro tunc, but it was refused, and the plaintiff recovered.
It has been argued that an abatement by the death of one of the parties, is a letting fall of the action, and, as no judgment is entered up in such case, the law does not require it in others. I will not indicate what should be done in such case, but it is very clear that cases of abatement by death do not come within the *58 Act of 1744. That Act only provides for cases which are ended by verdict, nonsuit, or the voluntary abandonment of the suit, as a discontinuance or failure to prosecute. The opinion of this Court is, therefore, that the defendant can take nothing by his first ground.
The second ground is, that there was no title in the plaintiffs. It is true there was no conveyance fiom the devisees of Wads-worth produced on the trial; but the Act of 1810 recites that Burnsides and others had been elected trustees of the school, and that the land had been conveyed according to the direction of the will of Wadsworth. In 1823 the trustees, by their corporate name, filed a bill in the Court of Equity, against John Black, to set aside certain leases, made by their predecessors. In the decrees pronounced in that case, they are treated as the owners of the lands devised by Wadsworth, and the late Chancellor BeSaus-sure signed the decrees, and he was one of the devisees under the will, to whom this land was devised. After such a lapse of time, with these facts, if the question had been made on the circuit, the jury should and would have been directed to presume a conveyance.
On the third ground, I deem it necessary to say no more than this, that the Act of 1805, (5 Stat. 496,) exempts the lands from the operation of the statute of limitations, without reference to those in whom the title was vested. The lands, therefore, in the hands of the plaintiffs, are as much exempt as in the hands of the first devisees.
The fourth ground is, that the Circuit Court erred in charging the jury that the Act of 1805 exempts the lands devised by Wadsworth from the operation of the statute of limitations; and the fifth asserts that the true construction of the Act is only an exemption for five years next after its passage. There can be no' doubt, from the words of the Act, that the exemption was intended to be perpetual. The testator’s design was to found a school to exist for all time to come; and the Act, in the preamble, assigns as a reason for the enactment, the probability that the object of the testator might be defeated by the operation of the *59 statute. The words of the Act are “ that the operation of the Act of limitation shall he and the same is hereby suspended, so far as it may relate to the lands,” &c.
The Act of limitations referred to was, no doubt, the Act of 1712, which was then, and is now, the statute of limitations. It is not repealed, hut only changed, by the Act of 1824, which extends the time from five to ten years, and this is all that is necessary to he said on the sixth ground.
None of the other exceptions to the charge of the Circuit Court have been argued in this Court, and the correctness of the charge is so obvious, that it is not thought necessary to discuss them in this opinion.
The motion for a new trial is therefore dismissed.
O’Neall, Wardlaw, Feost, and Withers, JJ., concurred.

Motion refused.